**STATE OF HAWAII,** Plaintiff–Appellee, v. **MICHAEL R. HOFFMAN,** Defendant–Appellant

NO. 14931

(CR. NO. 90–7901)

MARCH 18, 1992

PADGETT, ACTING C.J., HAYASHI, WAKATSUKI,
AND MOON, JJ., AND INTERMEDIATE COURT
OF APPEALS CHIEF JUDGE BURNS, IN PLACE
OF LUM, C.J., RECUSED

42

OPINION OF THE COURT BY MOON, J.

Defendant–appellant Michael R. Hoffman (Hoffman) appeals
from his conviction for unlawful display of intoxicating liquor in .

public areas, a violation of the Revised Ordinances of Honolulu § 13–4.2. At trial, the court allowed the arresting officer to testify regarding Hoffman's silence following an incriminatory statement made at the scene of the offense by an unidentified male, who did not testify at trial. On appeal, Hoffman contends that the trial court erred in admitting such hearsay testimony under the adoptive admission exception to the hearsay rule. Hoffman further contends that the evidence presented was insufficient to support his conviction.

We find that the officer's testimony regarding the statement and Hoffman's silence was improperly admitted. We further conclude that such admission was not harmless beyond a reasonable doubt. Thus, we vacate Hoffman's conviction and remand for new trial.

## I. FACTS

Honolulu police officer Stuart Yano (Officer Yano) testified at trial that on July 2, 1990, at approximately 12:28 a.m., he had observed Hoffman and another male, later identified by Hoffman as "Wayne,"[1] in the park area of the Queen's Surf beach in Waikiki. Officer Yano had also noticed a bottle of beer on a picnic table. Hoffman was standing approximately one foot from the bottle of beer and Wayne was seated on the picnic table bench approximately two or three feet from the bottle. Officer Yano testified that he had not seen Hoffman touch the bottle of beer. He approached the two men and asked Wayne whose alcoholic beverage it was. Wayne replied that it belonged to Hoffman. Hoffman did not deny Wayne's accusation, but remained silent. Officer Yano then asked Hoffman if it was his alcoholic beverage.

---

[1] During the course of Officer Yano's investigation, he did not obtain the name or other identification of the person he observed with Hoffman. The reference to that person as "Wayne" was made by Hoffman during his testimony at trial.

According to Officer Yano, Hoffman admitted it was his bottle of beer. Officer Yano testified that although he recognized the importance of the statements made to him by Hoffman and Wayne, neither statement appeared in his police report. He also testified that he did not obtain the identification of the person referred to as Wayne, explaining that he released Wayne because "he was not in violation."

Hoffman, who elected to testify at trial, denied that he had admitted to Officer Yano that the bottle of beer was his. He explained that while walking through the park, he came to a picnic table and sat on one of the benches. Four Marines whom he did not know came to the table drinking beer and began talking to him. They offered him a bottle of beer, which he refused. When the Marines departed, a bottle was left on the table. Shortly thereafter, another person whom Hoffman did not know sat at the table and engaged him in conversation. During this discussion, Hoffman learned that the person's name was Wayne and that Wayne was in the Navy. Hoffman testified that when Officer Yano asked Wayne whose bottle of beer was on the table, he heard Wayne state that the bottle was not his (Wayne's). Although Officer Yano testified that he detected an odor of alcohol on Hoffman's breath, Hoffman denied having had anything to drink that evening. Based on the evidence, the trial court found Hoffman guilty.[2] Hoffman now appeals, challenging 1) the admissibility of Officer Yano's

---

[2] The trial court stated:

> I will make the following findings of fact in this case, and this case really hinges on credibility. Whether I believe the police officer, or whether I believe [Hoffman].

> I find that on July 2, 1990, Officer Yano observed [Hoffman] in the park area of the Queen Surf's restrooms. He observed [Hoffman] to be standing near a picnic table. And [Hoffman] was in the company of a second unidentified male who apparently, according to [Hoffman], was one named Wayne.

> Officer Yano testified that he observed a bottle of beer a short distance from [Hoffman]. The policeman testified that he asked the unidentified male

testimony regarding Wayne's statement as hearsay and 2) the sufficiency of the evidence.

## II. DISCUSSION
### A.

In this case, the trial court allowed Officer Yano to testify to Wayne's statement regarding ownership of the bottle of beer and to Hoffman's. Wayne did not testify at trial.

At common law, where an incriminating statement was made in the presence and hearing of an accused and the accused did not deny the statement, it was the general rule that both the statement and the accused's failure to deny it were admissible in a criminal trial as evidence that the accused acquiesced in its truth. *Territory v. Corum*, 34 Haw. 167 (1937). That general rule has now been codified as a rule of evidence. Although not explicitly set forth in the language of Hawaii Rule of Evidence (HRE) 803(a)(1), the common law rule is referred to in the commentary to Rule 803(a)(1). The rule itself states:

> Hearsay exceptions; availability of declarant immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

---

whether it was his beer, and according to Yano, the other male said it was [Hoffman's] beer. [Hoffman] did not deny that accusation at the time.

[Hoffman] upon being questioned by the officer, according to Officer Yano, confirmed that it was his bottle of beer. Furthermore, the [c]ourt finds from the testimony of Officer Yano, that there was an odor of alcohol on [Hoffman's] breath.

The policeman said that he spoke to [Hoffman] for approximately four minutes, and observed there to be a moderate odor of alcohol on [Hoffman's] breath.

I'm satisfied from the evidence adduced that the bottle of beer was — or exhibit 1 was a bottle of beer, and it contained ethyl alcohol.

I'm satisfied that the chain of custody with respect to the evidence is solid. I therefore find [Hoffman] guilty as charged.

(a) Admissions

(1) Admission by party–opponent. A statement that is offered against a party and is . . . a statement of which the party has manifested the party's adoption or belief in its truth.

The commentary to HRE 803(a)(1) states that *silence* will only constitute an adoption of a statement when a

"person would, under the circumstances, protest the statement made in his presence, if untrue. The decision in each case calls for an evaluation in terms of probable human behavior." . . . [T]he issue is whether, in context, the statement was of such a nature that the person would reasonably have been expected to deny the statement it if were untrue.

Commentary to HRE 803(a)(1) (citing Advisory Committee's Note to Fed. R. Evid. 801(d)(2)(B)).

We acknowledge that Officer Yano's testimony regarding Wayne's statement was classic hearsay. Standing alone, Wayne's statement was inadmissible because it was made out of court and "offered in evidence to prove the truth of the matter asserted," that is, to prove that the bottle of beer belonged to Hoffman. *See* HRE 801(3).

However, under the adoptive admission exception, HRE 803(a)(1), a declarant's accusatory or incriminating statements are not admitted to prove the truth of matters asserted. Such statements are admissible because they lay the foundation to show what the defendant acquiesced or admitted to by adoption. *United States v. Giese*, 597 F.2d 1170 (9th Cir.), *cert. denied*, 444 U.S. 979 (1979); *State v. Neslund*, 50 Wash. App. 531, 749 P.2d 725 (1988); *People v. Rhodes*, 96 A.D.2d 565, 465 N.Y.S.2d 249 (1983).

Clearly, to have allowed and considered Wayne's statement without the evidence of Hoffman's alleged adoption by silence would have violated Hoffman's confrontation rights. "The inherent unreliability of hearsay statements raises special problems within the context of a criminal case since the out–of–court declaration also involves a defendant's constitutional right to cross–examine and confront the witnesses against him." *Blue v. State*, 558 P.2d 636, 644 (Alaska 1977). However, " '[a]n adoptive confession avoids the confrontation problem because the words of the hearsay become the words of the defendant.' When a defendant has adopted a statement, its reliability no longer depends on the veracity and demeanor of a third person not in court." *Neslund*, 50 Wash. App. at 554–55, 749 P.2d at 739 (quoting *Poole v. Perini*, 659 F.2d 730, 733 (6th Cir. 1981), *cert. denied*, 455 U.S. 910 (1982)). Thus, in the context of adoptive admissions, there generally is no violation of a defendant's right to confront the witnesses against him.

In *Territory v. Corum*, 34 Haw. 167, 174 (1937), this court stated: "The circumstances under which the accusatory statements are made must be not only such as afforded the accused an opportunity to speak but such also as would properly, naturally and reasonably call for some reply." Defendant Corum appealed the admission of hearsay testimony relating to incriminating statements that he had not denied while confined in prison following indictment for the murder of his wife.

> Where accusatory statements are made in the presence of a respondent and not denied, the question whether his silence has any incriminating effect depends upon whether he was under any duty or any natural impulse to speak. Sometimes or often, in the earlier stages of the matter, there may be such a duty or impulse; but, after the arrest and during an official examination, while respon-

dent is in custody, it is common knowledge that he has a right to say nothing.

*Corum*, 34 Haw. at 178. This court reversed Corum's conviction based on its findings that the incriminating statements and Corum's subsequent silence occurred after arrest.

Unlike *Corum*, the adoptive admission in the present case was "in the earlier stages of the matter." Although the reason is not precise, the following exchange indicates that the trial court apparently allowed Wayne's statement into evidence as a hearsay exception under HRE 803(a)(1) because it found that Hoffman was within hearing distance of the declaration and did not expressly deny it (emphasis added):

Q [By the prosecutor]: Okay. How far would the other male be from this bottle?

A [By Officer Yano]: Approximately two, three feet away.

Q Okay. When you saw this, what did you do?

A I got off my A.T.V. I asked him whose alcoholic beverage it was. First I asked the other male. He told me it was [Hoffman's] bottle.

[Hoffman's counsel]: Objection, Your Honor, hearsay. Move to strike.

THE COURT: All right. *The objection is overruled for the reason that [Hoffman] was within hearing distance of the declaration of the other party.*

[Hoffman's counsel]: Well, Your Honor—

THE COURT: And motion to strike is denied. You may be heard.

[Hoffman's counsel]: Well, Your Honor, what exception to the hearsay rule might that be?

THE COURT: *Wouldn't [Hoffman] be compelled to disclaim this?*

[The prosecutor]: I would say, Your Honor, it's a[n] admission against interest.

[Hoffman's counsel]: Your Honor, a person has no duty to disclaim anything. He has a right to remain silent.

THE COURT: All right. Your objection is noted, and your argument is noted on the record.

"A trial court should be most reluctant to credit mere silence — inherently ambiguous — as 'conduct' sufficient for adoption of an inculpatory statement." *United States v. Coppola*, 526 F.2d 764, 769 n.2 (10th Cir. 1975). Before admitting a proffered admission by silence, the trial court must preliminarily determine that the defendant actually heard and comprehended the effect of the words spoken and " 'that under the circumstances an innocent defendant would normally be induced to respond.' " *Giese*, 597 F.2d at 1196 (quoting *United States v. Moore*, 522 F.2d 1068, 1075 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049 (1976)). *See also People v. Rhodes*, 96 A.D.2d 565, 465 N.Y.S.2d 249 (1983). In its preliminary determination, the court should consider whether any other explanation, equally consistent with silence, exists:

> [F]ailure to deny the statements of others is admissible *"only when no other explanation is equally consistent with silence*; and there is always another possible explanation — namely, ignorance or dissent — unless the circumstances are such that a dissent would in ordinary experience have been expressed if the communication had not been correct."

*United States v. Gross*, 276 F.2d 816, 820–21 (2d Cir.), *cert. denied*, 363 U.S. 831 (1960) (emphasis added) (quoting 4 WIGMORE, EVIDENCE § 1071 (3d ed. 1940)).

In the present case, the court specifically found that "[Wayne] said it was [Hoffman's] beer," and the record indicates that Hoffman was within hearing distance of Wayne's statement. However, we cannot say, under the circumstances of this case,

that 1) Hoffman comprehended the effect of Wayne's statement, 2) Hoffman would naturally have been expected to deny the statement if untrue, or 3) there was no other explanation equally consistent with his silence. Hoffman's silence may have been motivated by many reasons, including failure to understand Wayne's response, failure to appreciate the incriminatory meaning of Officer Yano's question and Wayne's response, or intimidation by the mere presence of the officer at 12:30 a.m. Moreover, unlawful *display*[3] of an intoxicating beverage is not an offense that is as well–publicized as the offense of *drinking in public*. Even the State recognizes that Hoffman may not have known that the mere display of an intoxicating beverage was a violation of the law. However, in its brief the State contends that "regardless of whether [Hoffman] was cognizant that possession of [intoxicating liquor in a bottle] in a public area was a crime,[4] it was certainly reasonable to expect that he would deny the assertion if it were not true." The incongruity of the State's position is apparent. If Hoffman was not cognizant of the crime he was being accused of by Wayne's accusation, it would not have been reasonable to expect Hoffman to respond, even if the statement were untrue. Further, without any evidence in the record to indicate how he knew the bottle of beer belonged to Hoffman, Wayne's statement was mere speculation, and an innocent Hoffman may have been silent because he deemed Wayne's statement baseless and not worthy of response.

---

[3] Revised Ordinances of Honolulu, § 13–4.2, provides (emphasis added):

(a) *No person shall drink*, offer or *display* to public view *in any public park*, public playground, public school ground, public off–street parking area or any building located thereon, any *intoxicating liquor*, whether in a *bottle*, demijohn, jug, container or otherwise.

[4] The State admits that widespread publicity regarding violation of § 13–4.2 has been limited to *drinking* in public. The State declares: "In fact, periodic 'crack downs' on persons who *drink in public*, especially on or near the city's beaches have been well publicized over the years." (Citation omitted, emphasis added.)

Based on the above, we find that under the circumstances of this case, Hoffman would not have been induced to deny Wayne's accusation. Therefore, we conclude that Hoffman cannot be held to have adopted Wayne's statement by his silence. Thus, the hearsay was not admissible as an adoptive admission.

Having determined that Wayne's statement and Hoffman's silence were erroneously admitted, we must determine whether such admission was "harmless beyond a reasonable doubt . . . or phrased differently, that there is no reasonable possibility, that the erroneous admission of the evidence . . . may have contributed to appellant's conviction[.]" *State v. Domingo*, 69 Haw. 68, 71, 733 P.2d 690, 692 (1987) (citations omitted). We note that the trial court, in its findings, specifically referred to Wayne's statement and Hoffman's silence as a basis for his decision.[5] Thus, we are unable to conclude that such erroneously admitted evidence was harmless beyond a reasonable doubt or that it did not contribute to Hoffman's conviction.

## B.

In addition to Hoffman's argument that Wayne's statement was hearsay and thus inadmissible, he alternatively argues that Wayne's statement, which the trial court deemed an adoptive admission by silence, violated his right against self–incrimination under the Fifth Amendment to the United States Constitution and article I, § 10 of the Hawaii Constitution.[6] Hoffman's argument is premised on his position that "he was certainly a suspect and was not free to leave once Officer Yano approached him and [Wayne]

---

[5] *See supra* note 2.

[6] The Fifth Amendment to the United States Constitution and article I, § 10 of the Hawaii Constitution provide that, in a criminal case, no person shall be compelled to be a witness against himself or herself.

and began to investigate the crime." At that point, Hoffman maintains that he was in a custodial situation, and therefore warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), were required. Because we have determined that Wayne's statement and Hoffman's silence were not admissible, Hoffman's fifth amendment argument is moot as to Hoffman's admission by silence.

However, we consider the constitutional issue raised by Hoffman as encompassing Hoffman's verbal admission that the bottle of beer was his, and address the question of whether Hoffman was interviewed in a custodial context when he made such verbal admission.

In *State v. Wyatt*, 67 Haw. 293, 299, 687 P.2d 544, 549 (1984), this court stated, "[w]hether interrogation [is] carried on in a custodial context is dependent on the totality of circumstances surrounding the questioning. (Citation omitted.) The relevant circumstances include 'the time, place and length of the interrogation, the nature of the questions asked, [and] the conduct of the police at the time of the interrogation.' " (Citation omitted.) Defendant Wyatt was stopped by police for driving at night without headlights. While producing her driver's license, one of the officers became aware of the smell of alcohol coming from the passenger compartment of her car. When the officer asked Wyatt if she had been drinking, she responded in the affirmative. After failing a field sobriety test, Wyatt was arrested for Driving Under the Influence of Intoxicating Liquor. Prior to trial, she moved to exclude as evidence, among other things, her admission that she had consumed an alcoholic beverage on the night of her arrest. The motion was granted and the State appealed.

On appeal, this court held, *inter alia*, that the trial court erred in concluding that *Miranda* warnings were required before Wyatt was asked if she had been drinking. This court stated:

The record.. . . does not reflect that the officer may have been motivated by subterfuge or trickery in putting the

question to her. Quite to the contrary, his query was a direct and simple one marked by spontaneity.... *[W]hat transpired here may be more aptly described as on–the– scene questioning of brief duration conducted prior to arrest in public view.* In short, the circumstances sur- rounding the incident cannot support an inference that *Miranda* rights were triggered yet ignored; for nothing in the record suggests the setting was custodial or that the interrogation was of a nature likely to subjugate the defendant to the will of her examiner and undermine the constitutionally guaranteed privilege against self– incrimination.

*Id.* at 300–01, 687 P.2d at 550 (citations and footnote omitted, emphasis added).

Similarly, the record in the present case does not reveal any coercive factors usually attendant to custodial interrogation. Officer Yano's questions, first to Wayne and then to Hoffman, were direct, simple, and asked prior to arrest and in open view. The record does not suggest that the setting was custodial or "of a nature likely to subjugate the defendant to the will of [his] exam- iner and undermine the constitutionally guaranteed privilege against self–incrimination." *Id.*

Hoffman submits, however, that he "was certainly a suspect and was not free to leave[.]" This court has stated that "[w]hile focus of the investigation upon the defendant, standing alone, will not trigger the application of the *Miranda* rule, it is an important factor in determining whether the defendant was subjected to cus- todial interrogation." *State v. Melemai*, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982).

In *Melemai*, a jogger was struck by a pickup truck, which fled from the scene. An eyewitness gave police the license number and description of the truck and the number of occupants in the vehicle. Police obtained the name and address of the truck's owner from its

records. Upon arriving at the owner's address, a truck matching the description given by the witness arrived at the same time. Defendant, who was driving the truck, produced his driver's license at the request of the police officer. The officer asked defendant if he had hit anyone with the truck and defendant responded affirmatively. The officer then asked him why he ran away. Defendant stated that he got angry when he saw the jogger and "went for him." Both questions were asked before *Miranda* warnings were given. We held the first question and answer admissible while the second was not.

In our analysis, we noted "that application of the *Miranda* rule is limited. It does not preclude the police, in the exercise of their investigatory duties or functions, from making general on–the–scene inquiries as to facts surrounding a crime or other general questions in the fact–finding process." *Id.* at 481–82, 643 P.2d at 544 (citation omitted). We approved of the California Supreme Court's language in *People v. Manis*, 268 Cal. App. 2d 653, 74 Cal. Rptr. 423 (1969), delineating the outer parameters beyond which on–the–scene interviews may not proceed without *Miranda* warnings:

> [P]ersons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive (footnote omitted).

*Melemai*, 64 Haw. at 482, 643 P.2d at 544 (quoting *Manis*, 268 Cal. App. 2d at 669, 74 Cal. Rptr. at 433).

We concluded in *Melemai* that although the police investigation had focused on defendant prior to interviewing him, it was only after defendant had admitted his culpability that the officer

had reasonable grounds to believe that defendant had committed the crime, thus giving the police probable cause to arrest.

In the instant case, we believe that Officer Yano did not have probable cause to arrest Hoffman based solely on Wayne's accusation, or even with the fact that the beer bottle was closer to defendant than to Wayne. Probable cause to arrest was established only after Hoffman's admission and Officer Yano's detection of the odor of alcohol on Hoffman's breath.

Based on the foregoing, we find that Hoffman was not subjected to custodial interrogation prior to his arrest. Consequently, Hoffman's verbal admission that the bottle of beer was his was properly admitted.

## III. CONCLUSION

We conclude that the trial court abused its discretion in admitting Officer Yano's testimony regarding Hoffman's silence following an incriminatory statement made by an unidentified male because Hoffman cannot be said to have adopted such statement by his silence. Moreover, the error was not harmless beyond a reasonable doubt. Accordingly, Hoffman's conviction is vacated and the case is remanded for a new trial.

*Alexandra P. Scanlan*, Deputy Public Defender, for Defendant–Appellant.

*Alexa D.M. Fujise*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.